158 A.3d 1216

HEATHER GRIECO, PLAINTIFF, v. BOROUGH OF HADDON HEIGHTS; KELLY SANTOSUSSO, BOROUGH CLERK IN HER OFFICIAL CAPACITY AS CUSTODIAN OF THE RECORDS; AND KAITLYN COMPTON, DEPUTY BOROUGH CLERK IN HER OFFICIAL CAPACITY AS CUSTODIAN OF THE RECORDS, DEFENDANTS.

Superior Court of New Jersey
Law Division
Camden County

Decided: October 19, 2015

*Ted M. Rosenberg* for plaintiff (*Mr. Rosenberg,* on the briefs).

*Albert J. Olizi, Jr.* for defendants (*Mattleman, Weinroth & Miller, P.C.,* attorneys; *Mr. Olizi,* on the briefs).

DEBORAH SILVERMAN KATZ, A.J.S.C.

## INTRODUCTION

This action comes before the court by way of an order to show cause and verified complaint filed by plaintiff, Heather Grieco, seeking documents and attorney's fees under the Open Public Records Act ("OPRA") from defendants Borough of Haddon Heights ("the Borough") and the Borough's custodians of records, Kelly Santosusso and Kaitlyn Compton (collectively "defendants"). Following the filing of the verified complaint, the document sought by plaintiff were provided, rendering that aspect of the action moot. As such, the court is concerned only with plaintiff's request for attorney's fees.

## PROCEDURAL HISTORY

Plaintiff filed her verified complaint and order to show cause on July 27, 2015. The court entered the order to show cause on July 29, 2015, setting a return date of October 2, 2015. Through her complaint, plaintiff alleged that defendants violated OPRA and the common-law right of access by not providing copies of requested documents to her and sought judgment requiring defendants to provide the requested documents and awarding plaintiff attorney's fees and costs. Defendants timely filed an answer and opposition papers on August 26, 2015. Plaintiff timely filed a letter brief replying to defendants' opposition on September 11, 2015. Thereafter, the court granted leave for defendants to file a sur-reply pursuant to *Rule* 1:6-3, which was filed on September 15, 2015. The court heard arguments on October 2, 2015, and reserved decision.

## FINDINGS OF FACT

On July 6, 2015, plaintiff submitted an OPRA request to defendants, seeking the notice sent to two newspapers of record for all council meetings held from November 1, 2014, to April 1, 2015. The request was referred to defendant Santosusso, Borough

Clerk. Santosusso assembled some of the requested records before turning the task over to defendant Compton, Deputy Borough Clerk. On July 13, 2015, within the statutorily mandated time frame [1], defendant Compton forwarded the requested documents as to the council meetings held in 2015 under a cover letter making reference to the documents requested and noting in response, "Please see attached." The proof of publication for the 2014 meetings was not included. The council had met four times between November 1, 2014, and January 1, 2015. The cover letter stated, "If you feel a record has been denied or omitted, please see information below as to your options. . . ." Thereafter, the letter [2] reprinted *N.J.S.A.* 47:1A–6, with emphasis added to two words as follows:

A person who is denied access to a government record by the *custodian* of the record, at the option of the requestor, may:

institute a proceeding to challenge the *custodian's* decision by filing an action in Superior Court which shall be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases because of that judge's knowledge and expertise in matters relating to access to government records; or in lieu of filing an action in Superior Court, file a complaint with the Government Records Council established pursuant to section 8 of *P.L.* 2001, c. 404 (C. 47:1A–7). The right to institute any proceeding under this section shall be solely that of the requestor. Any such proceeding shall proceed in a summary or expedited manner. The public agency shall have the burden of proving that the denial of access is authorized by law. If it is determined that access has been improperly denied, the

[1] *N.J.S.A.* 47:1A–5(i) states, in part:

Unless a shorter time period is otherwise provided by statute, regulation, or executive order, a custodian of a government record shall grant access to a government record or deny a request for access to a government record as soon as possible, but not later than seven business days after receiving the request, provided that the record is currently available and not in storage or archived . . . . If the government record is in storage or archived, the requestor shall be so advised within seven business days after the custodian receives the request. The requestor shall be advised by the custodian when the record can be made available. If the record is not made available by that time, access shall be deemed denied.

[2] As defendants point out, the letter attached as Exhibit "A" to plaintiff's reply brief is not the letter relevant to this action. Defendants annex the appropriate letter as Exhibit "A" to their sur-reply.

court or agency head shall order that access be allowed. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee.

Plaintiff filed suit exactly two weeks later, on July 27, 2015. She did not communicate with defendants in any way between receiving their response and filing suit. No inquiry was made as to why the 2014 document was not provided. No action was taken by plaintiff after receiving defendants' response to her OPRA request until she filed suit. Once defendants were served with process in the present action on July 31, 2015, and therefore were notified about the missing document, defendant Santosusso provided the missing document on August 3, 2015. Plaintiff maintains this action to seek attorney's fees.

## CONCLUSIONS OF LAW

A person who requests a public record from a custodian of the record and is denied access to that record may institute a proceeding in Superior Court to challenge the custodian's decision. *N.J.S.A.* 47:1A–6. In any such proceeding, the public agency bears the burden of proving that the denial of access was authorized by law. *Ibid.* "A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." *Ibid.* The purpose of OPRA's fee-shifting scheme is to protect the public's right to certain government records, as without the provision "the ordinary citizen would be waging a quixotic battle against a public entity vested with almost inexhaustible resources." *New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr.*, 185 *N.J.* 137, 153, 883 *A.*2d 329 (2005). The Legislature intended to level the field through the fee-shifting provision. *Ibid.*

In order "[t]o be entitled to such counsel fees under OPRA, a plaintiff must be a prevailing party in a lawsuit ... brought to enforce his or her access rights." *Smith v. Hudson Cty. Register*, 422 *N.J.Super.* 387, 393, 29 *A.*3d 313 (App. Div. 2011). In many cases, it is simple to see whether or not a requestor is a "prevailing party"; if the trial court finds the government entity in violation of OPRA, the requesting party has prevailed within the

meaning of the statute. *E.g.*, *Gilleran v. Twp. of Bloomfield*, 440 *N.J.Super.* 490, 494, 114 *A.*3d 780 (App. Div. 2015).

It is more difficult, however, to determine whether a requestor is a prevailing party when the government agency voluntarily discloses the requested records after a lawsuit is filed. To address this issue, the New Jersey Supreme Court has adopted the "catalyst" theory. *Mason v. City of Hoboken*, 196 *N.J.* 51, 76, 951 *A.*2d 1017 (2008). "A plaintiff may qualify as a prevailing party, and thereby be entitled to a fee award, by taking legal action that provides a 'catalyst' to induce a defendant's compliance with the law." *Smith, supra,* 422 *N.J.Super.* at 394, 29 *A.*3d 313. In order to prove that the bringing of an action is a catalyst, it must be demonstrated that there exists "(1) a factual causal nexus between plaintiff's litigation and the relief ultimately achieved; and (2) that the relief ultimately secured by plaintiffs had a basis in law" (internal quotations and citation omitted). *Mason, supra,* 196 *N.J.* at 76, 951 *A.*2d 1017. It is the requesting litigant who bears the burden to prove that their action was the catalyst for disclosure, except when the government agency fails to respond to the request at all within seven business days. *Ibid.* In the latter situation, the agency bears the burden. *Ibid.*

A catalyst analysis is a fact-sensitive inquiry and requires the court to evaluate "the reasonableness of, and motivations for, an agency's decisions," on a case-by-case basis. *Id.* at 79, 951 *A.*2d 1017. Such analysis must take into account the fact that OPRA "is designed both to promote prompt access to government records and to encourage requestors and agencies to work together toward that end by accommodating one another." *Id.* at 78, 951 *A.*2d 1017.

With this in mind, the court turns its attention to determining whether plaintiff in this case is a "prevailing party" within the meaning of *N.J.S.A.* 47:1A–6. It is undisputed that plaintiff made an OPRA request for notices of council meetings, defendants provided notice as to the 2015 meetings but not the 2014 meetings,

plaintiff filed an action, and then defendants provided the document as to the 2014 meetings. The court finds that defendants inadvertently failed to forward the notice regarding the 2014 meetings. This finding is supported by the fact that once they were notified of the oversight (through service of the complaint) they immediately provided the document. This is significant because our Supreme Court has directed courts to evaluate the motivations for an agency's decision in denying or failing to turn over public records. *Mason, supra,* 196 *N.J.* at 79, 951 *A.*2d 1017. It is clear that defendants neglected to turn over the subject document not out of any ill will or malice, but through simple human error due to the turning over the task from one defendant to another.[3] When alerted to the mistake, defendants turned over the document plaintiff sought within a reasonable time.

██ It would not serve the purposes of OPRA to award attorney's fees in this case. OPRA envisions cooperation between requestors and government agencies. *Id.* at 78, 951 *A.*2d 1017. The very language of the statute contemplates collaboration between the two. *See N.J.S.A.* 47:1A–5(g) ("[i]f a request for access to a government record would substantially disrupt agency operations, the custodian may deny access to the record *after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency*" (emphasis added)). *See also Mason, supra,* 196 *N.J.* at 78, 951 *A.*2d 1017 (discussing this statute as an example of working together to promote access to records). The New Jersey Supreme Court has also looked favorably upon allowing custodians and requesting parties to agree to extend the seven-business-day response deadline imposed

---

[3] On July 7, 2015, the day after receiving plaintiff's OPRA request, defendant Santosusso began gathering the requested documents when she was called by the hospital at which her critically ill husband was a patient. The hospital informed Santosusso that she needed to get there as soon as possible. As a result, she left her unfinished duties to defendant Compton, who completed gathering the documents and sent them to plaintiff on July 13, 2015.

on the government by OPRA. *See ibid.* (referencing a decision of the Government Records Council).

It is clear from the record that the requesting party, plaintiff, made no attempt to cooperate or work with defendants in order to acquire the 2014 records. Exactly two weeks after receiving the letter from defendants with the documents regarding the 2015 council meetings, and doing nothing in between, plaintiff filed the present lawsuit. Defendants were unaware, due to a simple oversight[4], that their reply to the OPRA request was not fully responsive. Allowing attorney's fees in this case would be antithetical to the "cooperative balance OPRA strives to attain." *Ibid.*

In *Mason*, our Supreme Court adopted the catalyst theory but rejected a rebuttable presumption that the plaintiff has "prevailed" whenever a defendant discloses a requested record after an OPRA complaint is filed. *Id.* at 77–79, 951 *A.*2d 1017. The Court reasoned that such a presumption was improper because:

> [u]nder such a rule, plaintiffs would have an incentive to file suit immediately after a request for disclosure is denied or not responded to in a timely fashion, based in part on the expectation of an award of attorney's fees. Agencies, in turn, would have reason not to disclose documents voluntarily after the filing of a lawsuit. If they did, they would be presumed liable for fees. As a result, courts could expect to see more aggressive litigation tactics and fewer efforts at accommodation.
>
> [*Id.* at 78–79, 951 *A.*2d 1017.]

Awarding attorney's fees in the present case would be contrary to this rationale. Plaintiff, without even communicating with defendants to make them aware of the error, let alone attempting to cooperate with them, filed suit two weeks after defendants' response. To award attorney's fees in such a situation would incentivize requestors to keep silent when custodians of records make simple and unintentional errors. Furthermore, it would discourage

---

[4] Again, the 2014 document simply "slipped through the cracks" because defendant Santosusso, whose husband had been critically ill for several months, received a call from the hospital while preparing the OPRA response, informing her that she needed to get there as soon as possible. Through the turnover of the job from defendant Santosusso to defendant Compton, the document responsive to the request for the 2014 meetings was missed.

agencies from voluntarily providing any documents to requestors after suit has been filed, for fear of having to pay attorney's fees. Thus, a problem that could possibly be solved with a phone call quickly spirals into litigation, at odds with the intent of OPRA.

The facts of this case are similar to those in *Mason*. The plaintiff in *Mason*, who the Court noted was "no stranger to OPRA or Hoboken's records custodians," made an OPRA request on February 9, 2004. *Id.* at 58, 951 *A.*2d 1017. The city responded on February 20, 2004, saying that half of the records should be available in one week and the balance in two weeks. *Ibid.* The city's business administrator, whose duties included assisting in OPRA requests relevant to his position, was unable to do so because he was attending to his critically ill mother. *Ibid.* The plaintiff renewed her request in writing and then visited the city clerk's office personally on February 27, 2004, to demand access to the records. *Ibid.* Unsuccessful in this venture, the plaintiff filed suit on March 4, 2004, just thirteen days after the city's response. *Ibid.* The following day, the city advised the plaintiff that the records were ready to be picked up. *Id.* at 58–59, 951 *A.*2d 1017.[5] The Court denied an award of attorney's fees based on four reasons: (1) Hoboken alerted the plaintiff as to when the requested documents would be available (some within one week and the rest within two weeks); (2) the city's business administrator's mother suffered a heart attack during this time which complicated the city's ability to respond; (3) the day after the lawsuit was filed the city advised the plaintiff that the records were available to be picked up; and (4) the business administrator certified later that the records would have been provided the same day that they

---

[5] On September 27, 2004, the plaintiff also filed a second lawsuit relative to fifteen OPRA requests made from October 2003 through September 2004. *Mason, supra,* 196 *N.J.* at 59, 951 *A.*2d 1017. The facts of this suit are less relevant to the present case; the plaintiff sued in part because she was unsatisfied that Hoboken directed her to an internet site where certain requested documents were hosted and arranged for her to review three years' worth of OPRA requests in person over three days. *Ibid.* In any event, the court denied attorneys' fees for this case as well. *Id.* at 79, 951 *A.*2d 1017.

were in fact disclosed absent any lawsuit. *Id.* at 79–80, 951 *A.*2d 1017.

In this case, a plaintiff familiar with OPRA requested documents from defendants.[6] The municipality, unlike the one in *Mason*, timely responded with a portion of the documents requested. Defendant Santosusso, Clerk for the Borough, left her deputy, defendant Compton, to finish responding to the OPRA request, as she needed to tend to her critically ill husband, similar to the business administrator in *Mason*. Defendants forwarded the overlooked document to plaintiff "immediately" after being notified of their mistake. Furthermore, both defendants Santosusso and Compton certified that the subject document was "inadvertently omitted." *See ibid.* Therefore, it is clear plaintiff did not satisfy her burden to show that filing her lawsuit was the catalyst for disclosure.

Plaintiff argues that she heeded OPRA's encouragement to compromise and to make "efforts to work through certain problematic requests," *Mason, supra,* 196 *N.J.* at 76, 951 *A.*2d 1017, by waiting two weeks to file suit after receiving the partially responsive OPRA reply. The court is unpersuaded by this argument for two reasons.

First, the Appellate Division and Supreme Court have denied attorney's fees in cases where the requesting party has waited two weeks or more from receiving the government agency's disclosure denial to bring an action. *See id.* at 58, 79, 951 *A.*2d 1017 (denying attorney's fees when the plaintiff filed suit thirteen days after request response); *Spectraserv, Inc. v. Middlesex Cty. Utils. Auth.,* 416 *N.J.Super.* 565, 570–73, 583–84, 7 *A.*3d 231 (App. Div. 2010) (refusing to award attorney's fees in OPRA case where the requestor filed a complaint approximately three weeks after its

---

[6] At oral arguments, counsel for defendants pointed out that plaintiff has an e-mail account dedicated to making OPRA requests. In addition, plaintiff accidentally submitted defendants' response to a different OPRA request made by plaintiff the week after the subject request. The court points this out to highlight the similarities between plaintiff and the plaintiff in *Mason*.

final OPRA request was responded to and failed to prove complaint was catalyst for document production). In fact, the Appellate Division has declined to award attorney's fees even when approximately four months have passed in between the government's response and the commencement of the action. *See Burnett v. Cty. of Bergen*, 402 *N.J.Super.* 319, 323–24, 346, 954 *A.*2d 483 (App. Div. 2008), *aff'd in part, rev'd in part on other grounds*, 198 *N.J.* 408, 968 *A.*2d 1151 (2009). In *Burnett*, the plaintiff filed a request for records on April 17, 2006. *Id.* at 323, 954 *A.*2d 483. The county clerk responded on April 25, 2006, notifying the plaintiff of deficiencies in his request. *Ibid.* In early May 2006, the clerk and the plaintiff communicated as to how the plaintiff could correct his request and began a bidding procedure to have an outside vendor perform the copying requested. *Ibid.* On May 22, 2006, the plaintiff complained that he had not received a date for the bid yet and disagreed with a statement in the clerk's last letter. *Id.* at 323–24, 954 *A.*2d 483. The plaintiff did not file his complaint until August 2006, but the Appellate Division still denied him attorney's fees as he was not a "prevailing party." *Id.* at 324, 346, 954 *A.*2d 483. Surely if waiting four months and attempting to cooperate in the interim is insufficient, waiting two weeks while remaining silent is inadequate as well.

Second, plaintiff could have waited two weeks, two months, or two years before filing suit, but absent any communication with defendants, how would defendants have known they failed to completely answer the OPRA request? While the courts have never addressed this question specifically, the cooperative spirit of OPRA would seem to require some form of a follow-up request, in the form of a phone call, letter, or e-mail, to notify the municipality that a mistake was made. "Common sense precludes an assumption that the Legislature would intend to permit denial [of an OPRA request] but prohibit reasonable solutions that involve brief delay." *Spectraserv, supra*, 416 *N.J.Super.* at 582, 7 *A.*3d 231 (quotation omitted).

## CONCLUSION

For the reasons set forth above, this court finds that plaintiff's lawsuit was not the catalyst for the release of the records and plaintiff is thus not a prevailing party entitled to attorney's fees. Plaintiff's application for an award of attorney's fees is denied.