**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2427-22

MATTHEW LOTOCKI,

    Plaintiff-Appellant,

v.

PORT AUTHORITY OF NEW
YORK AND NEW JERSEY,
and WILLIAM SHALEWITZ,

    Defendants-Respondents.

_____

Submitted May 1, 2024 – Decided August 13, 2024

Before Judges Currier and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0013-23.

Matthew Lotocki, appellant pro se.

Port Authority Law Department, attorneys for respondents (Andres J. Castillo, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from the trial court's March 9, 2023 order vacating his order to show cause (OTSC) and dismissing his verified complaint which alleged defendants had violated the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. We affirm.

I.

On September 1, 2022, plaintiff submitted an email request to defendant Port Authority of New York and New Jersey (Port Authority) for security footage of his screening at a Transportation Security Administration (TSA) security checkpoint at Newark Liberty International Airport on August 23, 2022.[1] The next day, plaintiff received a response asking for a physical description of himself, the bags he was carrying, and details of the screening. Plaintiff responded with the requested information. After exchanging communications with defendant William Shalewitz, the custodian of government records for Port Authority, the footage was found on September 20, 2022. Plaintiff confirmed it was him after viewing a still image from the footage.

---

[1] Plaintiff has not provided any of the emails referenced in his verified complaint. We derive our information solely from the allegations in the complaint.

A-2427-22

When the video footage was not received, plaintiff inquired as to its status. Shalewitz responded on September 28, stating the video was not ready and he hoped to have a response soon. Plaintiff states he emailed defendants again on October 6 and 14. In the October 14 email, he advised defendants that if he did not receive a response by October 21, he would consider the request denied.

Defendants responded on October 14, attaching a Public Record Access Form signed by Shalewitz that stated, "the 'records that may exist are currently in storage or archived, or are maintained in the files of a department or office of the agency.'" The email said defendants would respond by November 4.

On November 8 and 16, plaintiff followed up on his request. He stated he would consider the request denied if he did not receive a response by November 22. Defendants responded on November 17 with another Public Record Access Form signed by Shalewitz, and stating more time was needed to process the request and they would respond by December 15.

On December 15, defendants sent plaintiff a Public Record Access Form signed by Shalewitz stating they would respond by February 10, 2023. Several minutes later, defendants sent a second Public Record Access Form advising plaintiff to disregard the prior message and they would respond by January 12, 2023. On December 21, plaintiff emailed Port Authority and its general counsel

stating if he did not receive the footage by January 12, he would consider his request denied and would file an OTSC and complaint.

Plaintiff filed a verified complaint and OTSC on January 3, 2023, alleging defendants violated OPRA, seeking the video footage, and requesting the imposition of a penalty on Shalewitz, along with costs and attorney's fees if plaintiff retained counsel. He emailed the pleadings to defendants the same day.

The parties agree defendants sent one video to plaintiff on January 5, 2023, and explained any other footage was exempt from disclosure under OPRA's security exemption. However, in response to plaintiff's follow-up request, and after receiving consent from the TSA, defendants sent plaintiff video footage with additional camera angles on January 13.

The trial court granted the OTSC on January 27, 2023, and heard oral arguments on March 9. During the argument, plaintiff conceded he did not file the complaint within the forty-five-day statute of limitations governing actions alleging an OPRA violation.[2]

---

[2] See Mason v. City of Hoboken, 196 N.J. 51, 70 (2008) (holding "that requestors who choose to file an action in Superior Court to challenge the decision of an OPRA custodian must do so within [forty-five] days").

In an oral decision issued the same day, the court found plaintiff's complaint was untimely. The court reasoned the deadlines plaintiff established in his communications with defendants started the forty-five-day period within which plaintiff could file a complaint. Regardless of whether the denial occurred on October 21, the first deadline plaintiff gave, or on November 4, which plaintiff contended was the first date defendants said they would make the footage available and did not, the court explained plaintiff did not file his complaint within the forty-five-day period following either of those dates. The trial court issued a written order vacating the OTSC and dismissing the verified complaint.

II.

On appeal, plaintiff contends the trial court erred in finding his complaint was untimely, not permitting the enlargement of time to file the complaint under Rule 4:69-6(c), and not finding plaintiff was the prevailing party entitled to costs.

Under N.J.S.A. 47:1A-1, "[G]overnment records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any

limitations on the right of access . . . shall be construed in favor of the public's right of access."

The timeline to produce requested documents is established in N.J.S.A. 47:1A-5(i)(1), which states:

> [A] custodian of a government record shall grant access to a government record or deny a request for access to a government record as soon as possible, but not later than seven business days after receiving the request, provided that the record is currently available and not in storage or archived.  In the event a custodian fails to respond within seven business days after receiving a request, the failure to respond shall be deemed a denial of the request . . . .  If the government record is in storage or archived, the requestor shall be so advised within seven business days after the custodian receives the request.  The requestor shall be advised by the custodian when the record can be made available.  If the record is not made available by that time, access shall be deemed denied.

Since it "is a threshold justiciability determination," we first consider whether the issues regarding the statute of limitations and the enlargement of the statute of limitations are moot.  Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010).  Our courts generally refrain from adjudicating issues that are moot.  Ibid.  "'An issue is "moot" when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'"  Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006)

6

(quoting N.Y. Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, 6 N.J. Tax. 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985)). One example of mootness is when the original issue between the parties has been resolved. De Vesa v. Dorsey, 134 N.J. 420, 428 (1993).

In the verified complaint, plaintiff stated he advised defendants and their general counsel on December 21, 2022, that if he did not receive the video footage by January 12, 2023, he would consider the inaction a denial and he would file a complaint and OTSC. Plaintiff received the requested video footage on January 5 and an additional video on January 13. Therefore, the first video was produced before the deadline date set by plaintiff in his communications with defendants.

As a result, there is no controversy between the parties for the court to decide. The statute of limitations is a non-issue and moot since the requested record was received before the agreed-upon date to start the running of the statute of limitations. Moreover, when plaintiff filed his complaint on January 3, there was no violation of OPRA since plaintiff had acquiesced to January 12 as the date for defendants to produce the footage.

We next consider whether plaintiff is entitled to costs as a prevailing party under N.J.S.A. 47:1A-6. The statute grants a prevailing requestor "a reasonable

7

attorney's fee." Ibid. Plaintiff was self-represented and did not retain counsel in the proceedings before the trial court or this court. He concedes in his reply brief that he is not entitled to counsel fees. However, he seeks the costs of bringing the lawsuit.

Under Rule 4:42-8(a), a prevailing party shall be awarded costs, unless otherwise prohibited. For the above stated reasons, we have determined plaintiff was not a prevailing party. However, plaintiff contends he is entitled to costs under the catalyst theory.

A plaintiff that has not won a final judgment on the merits can be considered a prevailing party if they meet both prongs of the catalyst theory: "(1) a factual causal nexus between the litigation and the relief ultimately achieved; and (2) that the relief ultimately secured by plaintiff had a basis in law." Jones v. Hayman, 418 N.J. Super. 291, 305 (App. Div. 2011) (quoting Mason, 196 N.J. at 76).

To determine whether there is a causal nexus, courts are instructed to "conduct [a] fact-sensitive inquiry on a case-by-case basis, evaluating the reasonableness of, and motivations for, [the] . . . decision[], and viewing each matter on its merits." Mason, 196 N.J. at 79. If "the extent and timing of the interim relief . . . strongly suggests" the litigation caused the other party's

8

actions, the other party then bears the burden to demonstrate their "actions . . . were wholly independent of [the other party's] legal efforts." Jones, 418 N.J. Super. at 306.

On December 15, 2022, defendants sent a revised Public Record Access Form advising they would respond to plaintiff's request by January 12, 2023. Plaintiff replied approximately a week later that he would consider his request denied and would pursue litigation if the January 12 deadline was not met. Before the established deadline, on January 3, plaintiff filed his complaint and OTSC. Defendants sent plaintiff one video on January 5 and, in response to plaintiff's follow-up request, one more video on January 13.

While plaintiff argues for the first time, in his reply brief, that he did not accept the January 12 deadline, his communications with defendants indicate otherwise. By delaying any potential legal action until after January 12, he agreed to give defendants until that date to comply with his request. Defendants provided the requested video nine days ahead of plaintiff's imposed deadline. Therefore, defendants' actions were not motivated by the pending litigation but rather were in accord with the previously agreed-upon deadline. Plaintiff has not satisfied the first prong of the catalyst theory. Therefore, he is not a prevailing party entitled to costs under Rule 4:42-8(a).

A-2427-22

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2427-22