**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1764-22

MARGARET SUDHAKAR,

    Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE
and NEW JERSEY ATTORNEY
GENERAL,

    Defendants-Respondents,

and

GOVERNOR PHIL MURPHY,

    Defendant.

_____

        Argued October 29, 2024 – Decided December 23, 2024

        Before Judges Smith, Chase and Vanek.

        On appeal from the Superior Court of New Jersey, Law Division, Mercer County Docket No. L-1706-22.

        Kurt W. Perhach (Elm Ridge Legal Consulting) argued the cause for appellant.

Vivek N. Mehta, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Sara M. Gregory, Assistant Attorney General, of counsel; Emily M. Bisnauth, Vivek N. Mehta and Daniel W. Knox, Deputy Attorneys General, on the brief).

PER CURIAM

Plaintiff Margaret Sudhakar appeals a trial court order denying her order to show cause (OTSC) and dismissing her complaint against defendants New Jersey State Police (NJSP), the New Jersey Attorney General (the AG), and Governor Phil Murphy alleging the denial of requests to perform DNA testing on historical documents from the Lindbergh kidnapping case constitutes a violation of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to 13, the common law right of access, and Governor Brendan Byrne's Executive Order 110. After a thorough review of the record and our jurisprudence, we affirm.

I.

We glean the salient facts relevant to our disposition from the record. This appeal centers on plaintiff's search for DNA evidence related to the kidnapping of infant Charles A. Lindbergh, Jr. on March 1, 1932. Between the kidnapping and the discovery of the infant's body, an unidentified individual sent numerous ransom notes to the Lindbergh family home. After law enforcement investigations, Bruno Richard Hauptmann was tried, convicted,

and ultimately executed in 1936 for the kidnapping and murder of the infant. Hauptmann proclaimed his innocence up until his death.

The NJSP Museum & Learning Center (the Museum) is the repository of the NJSP's historical recordings, including approximately 225,000 documents and other materials related to the Lindbergh case. Due to continued interest in the case, Governor Brendan Byrne signed Executive Order 110 (the EO) on October 9, 1981, providing the public with conditional access to evidence associated with the Lindbergh case. Acknowledging that reasonable measures needed to be implemented to ensure preservation of these historical items, the EO authorized the Superintendent of the NJSP to establish procedures to protect the files, records, and exhibits from the risk of damage or mutilation, while allowing the public to examine, inspect, and copy them.

The NJSP maintains the historical items in a temperature and humidity controlled locked room with monitored access. Evidence envelopes and their contents are housed in polyester sleeves to allow individuals to inspect the items without directly touching the artifacts or transferring any foreign substance to them. Those sleeves are retained in manuscript folders encased in archival boxes, both of which are acid-free.

On March 2, 2022, film director and producer Michael Braverman sent a

letter to the NJSP by email, seeking permission to extract DNA through undescribed "non-evasive"[1] testing of fourteen envelopes, eleven stamps and a piece of wood from the historical repository maintained by the NJSP under the EO. Braverman did not describe how the DNA samples would be extracted from the artifacts without damaging or altering them in any way. One week later, the NJSP denied the request.

Braverman forwarded a similar request to the Governor's Office, which responded that it was not the custodian of the items being sought. Braverman then sent a July 19 email to "Frank Caruso/Gov. Records 609-292-6830," the Executive Director of the Government Records Council (GRC), requesting permission to accomplish DNA testing of items in the NJSP Museum. The OAG's records custodian never received that request and no proof of delivery to the OAG was submitted to the trial court.

On September 28, 2022, plaintiff filed a verified complaint in lieu of prerogative writs and OTSC, alleging a violation of OPRA, the common law right of access, and the EO, requesting that the court compel the DNA testing of the envelopes and stamps maintained by the NJSP related to the Lindbergh

---

[1] Neither party offered a definition of "non-evasive."

 A-1764-22

kidnapping.[2] Braverman was not a plaintiff on the filing.

The OTSC was coupled with a letter from a forensic biology specialist, Arthur Young of Guardian Forensics, describing the methodology for the DNA testing he proposed to undertake to determine whether Hauptmann had licked the stamps and sealed the envelopes of the ransom letters sent to the Lindbergh home. Although Young characterized his untested "canned-air technique" for extracting DNA samples from the envelopes and stamps as "non-destructive," the technique required him to "neutraliz[e]" the adhesive on the historical artifacts by directly applying a chemical fluid to expose approximately ninety percent of the back flap of each envelope and the back of each stamp. After removal of a portion of the adhesive on the historical document and swabbing for DNA, he then proposed to reattach the envelopes and stamps in their original position with a new adhesive. Young advised that this method had only been carried out once on an envelope from 2002, and he did not rule out damage resulting from the proposed testing.

The OAG opposed the OTSC with multiple certifications including one from Gregory Ferrara, who stated the Museum regularly facilitates and

---

[2] Plaintiff initially sought permission to test wood from a ladder allegedly related to the kidnapping but has abandoned that request on appeal. Thus, our decision does not address that issue.

responds to requests for information from researchers, allowing access under the direct supervision of museum archivists and implementing specific precautions or conditions depending on the item being examined. Ferrara certified that researchers are not permitted to expose Museum artifacts to foreign chemicals or other substances, nor are they permitted to alter the condition of the items. The OAG also submitted a certification from Michael J. Kennedy, Jr., the Director of NJSP Office of Forensic Sciences, opining that the DNA extraction tests proposed by plaintiff will permanently alter the condition of each of the historical items tested and is potentially destructive to the artifacts.

After the OAG opposed the OTSC, plaintiff submitted her own OPRA requests to the OAG and NJSP on December 15, seeking the same DNA testing as Braverman.[3] The OAG denied plaintiff's requests. Plaintiff did not move for leave to file an amended verified complaint to seek relief related to her OPRA requests. Instead, she submitted reply certifications informally asking that her requests be "merged" with this case and that Braverman be considered a plaintiff on the litigation she filed.

Plaintiff also submitted a reply certification from Young asserting that

---

[3] Plaintiff had not submitted her own OPRA request prior to the filing of her verified complaint and OTSC.

A-1764-22

he was working on obtaining several envelopes from the 1920s and 1930s to test his technique, since he had not successfully utilized this extraction method on historical documents of the same age as the ones he sought to test. Nonetheless, Young offered to show how he can extract a DNA swab by opening the sealed back flaps of the envelopes and removing a portion of each stamp prior to reattaching them. The testing he described involves removal of some of the existing adhesive on the historical document through "neutralizing" and then adding another type of adhesive to the artifact.

Plaintiff also included photographs and a certification that the Museum suffered from a water leak on or about March 24, 2022, in her reply. However, plaintiff did not assert any items she sought to test were damaged or destroyed as a result of the leak.

After oral arguments, the trial court issued a January 5, 2023 order accompanied by a written decision denying plaintiff's OTSC and dismissing the verified complaint. The trial court found that because "[p]laintiff filed her complaint prior to submitting an OPRA request and receiving a denial," this "by itself, [was] enough to dismiss her complaint in its entirety." The trial court reasoned that since "[p]laintiff did not file an OPRA request . . . [d]efendants did not deny her access under OPRA."

Nonetheless, the trial court addressed the substance of the complaint, ruling plaintiff had no right under either OPRA or the common law to proceed with the requested DNA testing, which risked permanently altering the condition of the items. The trial court found "OPRA is not the vehicle by which a citizen can march up to a museum and demand that the custodians of historical artifacts and documents surrender the [AG's] treasures for analysis, alteration and destruction" and that the request was inconsistent with the right of common law access.

This appeal followed.[4]

## II.

After our de novo review, we are unpersuaded that the trial court erred in finding plaintiff's complaint was procedurally deficient. In re N.J. Firemen's Ass'n Obligation to Provide Relief Applications Under Open Pub. Recs. Act, 230 N.J. 258, 273-74 (2017) (a court's "determinations about the applicability of OPRA and its exemptions are legal conclusions and are therefore subject to de novo review").

"OPRA's purpose is 'to maximize public knowledge about public affairs

---

[4] Plaintiff appealed the denial of her December 15, 2022 OPRA requests to the GRC on March 2, 2023 (GRC Complaints No. 2023-49 and 2023-50). The GRC denied relief due to the pendency of this appeal.

in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'"  Mason v. City of Hoboken, 196 N.J. 51, 64-65 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)).[5]  OPRA establishes with specificity the process by which a requestor may challenge an OPRA denial, id. at 66 (citing N.J.S.A. 47:1A-6), providing that:

> [a] person who is denied access to a government record by the custodian of the record, at the option of the requestor . . . may . . . institute a proceeding to challenge the custodian's decision by filing an action in Superior Court which shall be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases because of that judge's knowledge and expertise in matters relating to access to government records; . . . .
>
> [N.J.S.A. 47:1A-6.]

OPRA additionally provides that "[t]he right to institute any proceeding under this section shall be solely that of the requestor."  Ibid.

OPRA actions are subject to a forty-five-day limitations period.  Mason, 196 N.J. at 68.  The Court in Mason reasoned that the forty-five-day time frame "provides certainty and repose to public bodies faced with numerous OPRA requests.  At the same time, it offers the public ample opportunity to

---

[5]  We apply the OPRA statute in effect at the time plaintiff's OTSC was decided, prior to the 2024 amendment.

challenge a denial of access." Id. at 70.

We find no error with the trial court's determination that plaintiff's verified complaint was procedurally improper. The Court in Firemen's Ass'n, 230 N.J. at 278, made clear that litigation cannot be initiated except by the requestor, after a public agency's denial. Plaintiff submitted the December 15, 2022 OPRA requests after she filed suit and then failed to move for leave of court to amend the verified complaint to seek relief from the denial of those requests. The trial court lacked the authority under OPRA to consider plaintiff's newly-filed requests because they were not the subject of the verified complaint before the court. Plaintiff's argument that there was no procedural defect since the trial court and the OAG were aware of her post-filing OPRA requests and subsequent denials through her reply brief filed prior to the OTSC hearing is not supported by prevailing law.

Since OPRA explicitly confers the right to initiate suit only upon the requestor, Braverman was the only individual with the right to challenge the denial. Ibid. Even if we considered Braverman's requests, we discern no error with the trial court's finding that the verified complaint was barred by the forty-five-day limitations period. Braverman's request was filed on March 2, 2022, while plaintiff's verified complaint and OTSC was not filed until

10

September 28, 2022. There is no evidence in the record that the OAG received any further requests from Braverman within the forty-five-day limitations period. Therefore, even if we had considered plaintiff's verified complaint and OTSC as properly pursuing Braverman's requests, the action would be time-barred as filed more than forty-five days from the March 9, 2022 denial.

For these reasons, we conclude the trial court did not err in denying plaintiff's OTSC and dismissing the verified complaint based solely on procedural deficiencies. Although the trial court substantively addressed the relief plaintiff sought, since the claims are procedurally barred our analysis need not go further.

To the extent we have not addressed any of plaintiff's remaining arguments on the procedural issues, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1764-22