NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1466-23

ALEX ROSETTI,

       Plaintiff-Appellant,

v.

RAMAPO-INDIAN HILLS
REGIONAL HIGH SCHOOL
BOARD OF EDUCATION[1]
AND THOMAS LAMBE,
IN HIS OFFICIAL CAPACITY
AS RECORDS CUSTODIAN,

       Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 27, 2025**
>
> **APPELLATE DIVISION**

Argued October 8, 2024 – Decided January 27, 2025

Before Judges Sumners, Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1383-23.

Donald M. Doherty, Jr. argued the cause for appellant.

Johnathan F. Cohen argued the cause for respondents (Plosia Cohen LLC, attorneys; Johnathan F. Cohen, of counsel and on the briefs).

---

[1] Improperly pled as Rampapo-Indian Hills Regional High School Board of Education

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

The issue before this court, one of first impression, is whether the Open Public Records Act (OPRA or Act), N.J.S.A. 47:1A-1 to -13, compels the disclosure of email logs of public officials' personal computers discussing public business. The trial court's order denied plaintiff Alex Rosetti's OPRA request of defendants Ramapo-Indian Hills Regional High School Board of Education (Board or District) and Thomas Lambe, the Board's records custodian, seeking email logs from the personal computers of past and current Board members (collectively Board members) discussing Board business. The court decided the email logs were not government records and, if they were, they are too burdensome to produce.

We reverse the trial court's order and remand. We conclude the email logs on private servers are government records under N.J.S.A. 47:1A-1, and are disclosable based on Ass'n for Government Responsibility, Ethics & Transparency v. Borough of Mantoloking, 478 N.J. Super. 470, 489 (App. Div. 2024), where we held "OPRA's broad reach can include emails concerning

government business, sent to or from personal accounts of government officials — if the emails fall within the definition of government records."

On remand, the Board members must search their personal email accounts to determine if the sought-after email logs are available. If they determine the email logs are unavailable or there are burdens in producing them, they must produce Paff I[2] certifications. The trial court must then decide if a fact-finding hearing is needed. After giving Rosetti the opportunity to respond, the trial judge must then decide if a fact-finding hearing is necessary. Moreover, the court must be satisfied the parties made good faith efforts to reasonably resolve their dispute. Only after this process occurs can the court decide if production of the email logs should be provided, or if it would be too burdensome to provide.

I.

In January 2023, Rosetti filed an OPRA request with the Board, seeking:

> [1] All comments submitted by the public comments form received by the Board from August 1, 2022 through to the date [for] the response. The response should include the name, email, town and the question or comment of the sender.

---

[2] Paff v. New Jersey Dep't of Labor, 392 N.J. Super. 334, 341 (App. Div. 2007) (Paff I).

[2] Email logs of all past and current Board members for all email accounts in which they have conducted or discussed Board of Education matters or business during the time frame of November 1, 2022 through to the date of the response. The email log should contain the sender, recipient, those copied ("cc") or blind copied ("bcc"), the date, time, subject and identify the existence and name of any attachment.

When the Board did not timely respond to the requests, Rosetti filed an order to show cause and verified complaint against the Board in the Law Division, claiming entitlement to the email logs under OPRA.

In response, the Board contended that Rosetti's requests should be re-organized in the following manner:

> (1) All comments submitted by the public comments form received by the Board from August 1, 2022, through to the date of the response. The response should include the name, email, town and the question or comment of the sender.
>
> (2)(a) Email log[s] of Board members from Board server[s]; and
>
> (2)(b) Email log[s] of Board members from their own personal email addresses.

The parties reached a settlement regarding all but the Board members' email logs pertaining to their own personal email addresses.

After reviewing the Board members' email logs from the Board's servers, Rosetti submitted a certification to the trial court attesting: "[I]n the log that

4 <span>A-1466-23</span>

was supplied there are <u>dozens</u> of redactions demonstrating Board members using their District-supplied email accounts to communicate with other Board members['] personal email accounts and even sending information to their own personal accounts." To further support his request, Rosetti cited to "a newspaper article detailing the intricate, involved and expansive agenda the [Board] was able to vote upon without any significant discussion at its reorganization meeting." He thus reasoned "that communications regarding Board business are taking place outside the realm of the District[-] controlled email accounts."

The Board opposed the request with a certification by John Chang, the Board's Director of Technology, claiming email logs from private servers pose distinct challenges because each server may have their own administrative settings. The different settings, Chang noted, "make it impossible or extraordinarily time consuming to create logs of any kind." He added, "[e]ven if I could figure out how to generate a log for some of these email serv[ers], it could potentially take me hours to construct each one and I would be unable to ensure the integrity of the data (e.g., I cannot recover deleted emails in the same way I can on the District Workspace service)." As such, Chang contends his ability to generate logs on private servers is "difficult if not impossible" for many types used by the Board members.

A-1466-23

The trial court agreed with the Board and denied Rosetti's request for the Board members' personal email logs on the basis that it exceeded the purview of OPRA. The court stated in its thorough written decision that "[t]he [Paff II[3]] Court did not opine email logs from third-party email accounts were required and nothing in the Court's opinion supports the compelled production of same." The court distinguished Rosetti's request from the one in Burnett v. Gloucester County, 415 N.J. Super. 506 (App. Div. 2010), reasoning that there, the "third-party" government records were maintained by the county's agents, and, thus, imputed to the government. The court continued that "[w]hile it is undeniable that [Rosetti] has a right to the email correspondences from the private email accounts of the Board members, that right cannot be extended to include email logs from personal, non-Board-issued email accounts." (Emphasis added).

The court emphasized that granting Rosetti's request would impose a substantial burden on the Board not authorized by OPRA because Board members would have to spend considerable time, resources, and effort to obtain such logs from their private servers. Given the Board members' technical limitations, the court determined that compliance would require them to "conduct a search for the responsive emails not within [the Board's] custody or

---

[3] Paff v. Galloway Twp., 229 N.J. 340 (2017) (Paff II).

A-1466-23

control and manually compile and collate information to generate a log." The court found this task was not required by OPRA.

Lastly, the court rejected Rosetti's transparency concerns, deciding "[t]here is no valid concern that, by their inability to produce the private email logs, [Board members] are evading their obligation under OPRA." This appeal followed.

## II.

### Whether Email Logs Are Government Records

To resolve this appeal, we must first determine whether the email logs requested by Rosetti constitute government records under OPRA. When interpreting a statute, we look to the Legislature's intent as set forth in the statute's plain language. Conforti v. Cnty. of Ocean, 255 N.J. 142, 163 (2023). "Where statutory language is clear, courts should give it effect unless it is evident that the Legislature did not intend such meaning." Bubis v. Kassin, 184 N.J. 612, 626 (2005) (quoting Rumson Ests., Inc. v. Mayor of Fair Haven, 177 N.J. 338, 354 (2003)). We "ascribe[] to [a statute's] words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 519 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the

language [of a statute] is clear, the court's job is complete." In re Diguglielmo, 252 N.J. 350, 360 (2022) (quoting In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014)).

A trial court's factual findings regarding OPRA will only be disturbed if they are not supported by adequate, substantial, and credible evidence. See Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 475 (1988). Our review of the court's legal interpretations of OPRA is de novo. N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 441 N.J. Super. 70, 89 (App. Div. 2015) rev'd on other grounds, 229 N.J. 541 (2017).

OPRA was "enacted 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process,'" Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)), as a means to make governmental action transparent, Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 141 (2022). In furtherance of this goal, our Legislature declared that "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. Exemption can be through "statute, legislative resolution, administrative regulation, executive order, rules of court,

judicial decisions, or federal law." Asbury Park Press v. Cnty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009) (citing N.J.S.A. 47:1A-1, -9).

In his appeal, Rosetti argues the trial court misinterpreted OPRA and pertinent caselaw in determining the Board's "records custodian[] [does not have] to obtain email logs of privately-owned email accounts being used to conduct government business." He asserts the court's order undermines the legislative intent behind OPRA, which the Burnett Court held is to provide "ready access to government records by the citizens of this State." 198 N.J. at 421. He argues the court mistakenly denied his request because email logs are stored on private servers, rather than granting his request given it is undisputed the logs pertain to Board business, making them government records under OPRA.

> N.J.S.A 47:1A-1.1 defines a government record as
>
>> any paper, . . . document, . . . information stored or maintained electronically . . . , or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State.
>
> [N.J.S.A 47:1A-1.1 (emphasis added).]

Rosetti stresses that under our rules of statutory construction, the Supreme Court has ruled "[t]he use of 'or' plainly indicates that any of those three listed

9

actions is sufficient to satisfy the statutory definition." Simmons, 247 N.J. at 41. He thus reasons the use of the disjunctive "or" indicates that "[t]he status of something being a government record is not [dependent] upon who owned the pen that wrote it or the email account that created it." Rosetti claims, to rule otherwise, would as the Court held in Burnett, allow "a governmental agency seeking to protect its records from scrutiny [to] simply delegate their creation to third parties or relinquish possession to such parties, thereby thwarting the policy of transparency that underlies OPRA." 415 N.J. Super. at 517 (citing N.J.S.A. 47:1A-1). Rosetti also argues in a Rule 2:6-11(d)(1) supplemental letter that the majority and dissenting opinions in our recent decision in Mantoloking, both "accepted that emails involving government business sent through private email accounts 'on a private server' would be government records." See 478 N.J. Super. at 489.

The Board contends the trial court's ruling was correct because the email logs are kept on private servers, and only records kept on government-controlled servers are under OPRA's purview. The Board gleans support from Bent v. Township. of Stafford Police Department, 381 N.J. Super. 30, 38 (App. Div. 2005), where we held a narrow view of OPRA, finding the municipality's records "custodian was under no obligation to search for [records] beyond the township's

10

files." The Board maintains our ruling five years later in <u>Burnett</u> does not support Rosetti's position because there, the requested records were kept by a third-party which served as a government agent, and thus were "'made' by or on behalf of" the public body. The Board cites <u>Paff II</u>, issued seven years after <u>Burnett</u>, where the Court held "OPRA makes clear that government records consist . . . [of] 'information stored or maintained electronically' in a database <u>on a municipality's server</u>." 229 N.J. at 353 (emphasis added). Considering these caselaw trends, the Board takes a contrary view of <u>Mantoloking</u>, arguing it is factually distinct from Rosetti's request. It contends that case entailed "a municipal prosecutor [who] redacted certain information from an email from her private account which she showed to counsel for a criminal defendant" and held that it was not a government record nor disclosable under OPRA. <u>See</u> <u>Mantoloking</u>, 478 N.J. Super. at 492-93. In sum, the Board argues upsetting the court's order would violate OPRA by expanding it to cover proprietary email servers.

Assessing the trial court's reasoning and the parties' arguments leads us to conclude that the requested email logs are government records under OPRA because they relate to Board business even though they are on Board members' private servers and not maintained nor controlled by the Board.

An email log is "electronically stored information extracted from an email," "not the creation of a new record or new information" and is a government record under OPRA when it relates to government business. Paff II, 229 N.J. at 343, 353 (2017). The fact that Rosetti's OPRA request sought email logs on the Board members' private servers is not a basis to deny disclosure. As noted, N.J.S.A. 47:1A-1.1 provides a government record is "information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of his or its official business by any officer." (Emphasis added.). Our Supreme Court recently recognized that the Legislature's use of "or" means that any of the listed actions—made, maintained, or kept—is sufficient to constitute a government record. Simmons, 247 N.J. at 41. Thus, even though the email logs are not kept on Board servers, they are nonetheless government records because they reference Board business. See ibid. ("[R]egardless of who maintains the files, the fact that [the defendant] 'makes' the CDR-1s means that it can be called upon to disclose those government records.").

Concluding the email logs on the Board members' private servers are subject to OPRA is in line with a broad reading of the Act. See Rivera, 250 N.J. at 141 (2022); see also Simmons, 247 N.J. at 38 (2021); Burnett, 415 N.J. Super.

12

at 517. As we recently held in <u>Mantoloking</u>, "OPRA's broad reach can include emails concerning government business, sent to or from personal accounts of government officials — if the emails fall within the definition of government records." 478 N.J. Super. at 489. To allow the Board members' email logs to be concealed under the cover of their private servers would be inconsistent with OPRA's well-settled legislative intent that "any limitations on the right of access [to government records] . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. To embrace the Board's position would undermine the democratic access to public records and prevent Board members from being held accountable for their decisions. <u>See e.g.</u>, <u>Fair Share Hous. Ctr., Inc. v. N.J. State League of Muns.</u>, 207 N.J. 489, 502 (2011) ("Those who enacted OPRA understood that knowledge is power in a democracy, and . . . without access to information contained in records maintained by public agencies[,] citizens cannot monitor the operation of our government or hold public officials accountable.").

In reaching our conclusion, we are unpersuaded that the Board's reliance on <u>Bent</u>, where we held OPRA does not require a township records custodian to search for records beyond the township's files, dictates that Rosetti's request should be denied. 381 N.J. Super. at 38. In our subsequent decision in <u>Burnett</u>,

we opted for a narrow reading of <u>Bent</u> and a broader interpretation of OPRA. In <u>Burnett</u>, the plaintiff sought documents pertaining to a settlement reached by third parties on behalf of Gloucester County that were not in the county's possession. 415 N.J. Super. at 508. We concluded the documents were subject to disclosure under OPRA and distinguished <u>Bent</u>, reasoning:

> We find the circumstances presented in <u>Bent</u> to be far removed from those existing in the present matter because, as we have previously concluded, the settlement agreements at issue here <u>were "made" by or on behalf of the Board in the course of its official business.</u> Were we to conclude otherwise, a governmental agency seeking to protect its records from scrutiny could simply delegate their creation to third parties or relinquish possession to such parties, thereby thwarting the policy of transparency that underlies OPRA.
>
> [<u>Id.</u> at 517 (citing N.J.S.A. 47:1A-1) (emphasis added).]

We therefore pronounced that OPRA may extend to records not within a public body's immediate possession if public officials made them. <u>Ibid.</u> <u>Burnett</u> is consistent with our statutory construction of N.J.S.A 47:1A-1.1 that records are government records if they are <u>made by</u> government officials even when the records are maintained by third parties, not the government.

Based on the record before us, we hold the email logs of the Board members' private servers sought by Rosetti are subject to OPRA because the

14

emails discuss Board business and were made by the Board members. Concluding these email logs contain government records under OPRA prevents government officials from circumventing OPRA by using personal email accounts and sustains the legislative intent behind the statutory scheme. This decision may also discourage government officials from using their personal devices, email accounts, or cell phones (texts) to conduct government business to avoid public disclosure otherwise permitted by OPRA.

III.

Production of the Email Logs

Having concluded the email logs from the Board members' private servers are government records under OPRA, we address the trial court's order that the Board does not have to disclose them because it is unduly burdensome.

Rosetti contends production of an email log from a private server is not unduly onerous. He emphasizes the Board's IT specialist Chang only certified that he believes he lacks the authority and is unable to construct an email log from a private account. He contends the Board's nondescriptive assertions of hardship falls short of "an actual specific demonstrated hardship." See Mason, 196 N.J. at 78. Rosetti stresses "[t]here is no defense for the [Board] to simply

15

assert that 'in theory' it does not have access to the records, particularly without even trying to obtain access and possession."

Nevertheless, Rosetti argues that any difficulty in retrieving the private email logs was created by the Board members' decisions to avoid use of Board-issued email accounts and they and the Board should not be allowed to circumvent OPRA requirements due to self-imposed burdens. Rosetti contends the Board members should be required to search their private servers for responsive emails and file Paff I certifications[4] "to protect . . . [Lambe] by demonstrating that [whoever] has the records has conducted an adequate search for them." See e.g., Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 474 (App. Div. 2023) ("[T]he employees' searches of their own devices,

---

[4] Paff I certifications are sworn statements by government personnel setting forth:

> (1) the search undertaken to satisfy the request;
> (2) the documents found that are responsive to the request;
> (3) the determination of whether the document or any part thereof is confidential and the source of the confidential information; [and]
> (4) a statement of the agency's document retention/destruction policy and the last date on which documents that may have been responsive to the request were destroyed.
>
> [Paff I, 392 N.J. Super. at 341.]

and their production of certifications attesting to their searches, complied with the explicit terms of the subpoena, as well as [OPRA].").

The Board contends the trial court correctly determined the email logs were not disclosable due to "the technological realities that make it nearly impossible to obtain email logs from personal accounts on [private servers]." The Board refutes Rosetti's contention that the Board may simply subpoena private email servers to access the email logs because OPRA does not compel custodians to conduct research. See MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 546-47 (App. Div. 2005). The Board explains, "courts could not conceivably require that to fulfill an OPRA request a . . . [public body] must issue a subpoena to a technology company to force it to generate an email log that a trained IT Director is unable to construct due to proprietary limits."

Based on the record before us, we conclude Rosetti's OPRA request is not unduly burdensome. Although a public agency may reject a records request if granting access "would substantially disrupt agency operations," the records custodian must "attempt[] to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." N.J.S.A. 47:1A-5(g). Our Supreme Court has recognized that, in cases like this involving

technology, "[i]t may take only two to three minutes for an IT Specialist to make accessible fields of information from two weeks of emails; it will take considerably longer . . . to determine whether the requested information in each email may intrude on privacy rights." Paff II, 229 N.J. at 357. Thus, a remand may be necessary for a hearing so that the public agency can substantiate its claims that there are unfeasible burdens to produce the documents and the requestor be afforded the opportunity to respond. Ibid.

We find instructive our recent decision in Lipsky where we recognized that government employees' personal devices may not be subject to civil discovery unless the government entity party in the litigation "has 'possession, custody or control' over that data." 474 N.J. Super. at 471 (citing R. 4:18-1(a)). Yet, we intimated that the information on the personal devices may be subject to OPRA. Id. at 472. We pointed out that "courts in other jurisdictions have concluded that public records contained in personal accounts or on personal electronic devices may be subject to production under those jurisdictions' open public records statutes."[5] Ibid. Consequently, "th[o]se courts have concluded

---

[5] We referenced the following cases: Ethyl Corp. v. U.S. Env't Prot. Agency, 25 F.3d 1241, 1246-47 (4th Cir. 1994); City of San Jose v. Superior Court, 389 P.3d 848, 858-61 (Cal. 2017); Better Gov't Ass'n v. City of Chicago Off. of Mayor, 169 N.E.3d 1066, 1074-78 (Ill. Ct. App. 2020); Toensing v. Att'y Gen.

that employees may be required to search their own accounts and devices and produce data responsive to the records request, subject to any assertions of privilege or confidentiality by the public employer." Ibid.

We conclude a remand is necessary here. We part company with the trial court's determination that the record established that Board members' private email logs cannot be provided because "[the Board] do[es] not possess the technological capabilities to produce [Rosetti's] requested email logs without difficulty." Given the insufficiency of Chang's certification — it is "difficult if not impossible to generate logs from . . . private email accounts" — the trial court should require the Board members to search their personal email accounts to determine if the sought-after email logs are available. If the email logs are unavailable or their production is burdensome, they must be supported by persuasive Paff I certifications. Rosetti, of course, should have the opportunity to respond. After the court reviews the parties' submissions, then it must decide if a fact-finding hearing is needed. Moreover, the court should ensure the parties make good faith efforts to reasonably resolve the document request as required

---

of Vt., 178 A.3d 1000, 1002, 1004, 1009-13 (Vt. 2017); Nissen v. Pierce Cnty., 357 P.3d 45, 49, 56-58 (Wash. 2015).

A-1466-23

by N.J.S.A. 47:1A-5(g).  Only after this process can the court judiciously determine if retrieval of the email logs is too burdensome.

We remind the court that special service charges may be imposed to compensate the public agency for unconventional retrievals of government records.  N.J.S.A. 47:1A-5(c).  The statute provides:

> Whenever the nature, format, manner of collation, or volume of a government record embodied in the form of printed matter to be inspected, examined, or copied pursuant to this section is such that the record cannot be reproduced by ordinary document copying equipment in ordinary business size or involves an extraordinary expenditure of time and effort to accommodate the request, the public agency may charge, in addition to the actual cost of duplicating the record, a special service charge that shall be based upon the actual direct cost of providing the copy or copies, and such special service charge shall be reasonable.

> [N.J.S.A. 47:1A-5(c).]

We take no position whether such charges are appropriate.

Additionally, if there are concerns about the disclosure of privileged material, a Vaughn[6] index might be necessary.  In the index, the records custodian "must describe each document in sufficient detail to provide the requestor 'with as much information as possible to use in presenting his case'

---

[6] Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

and to enable the decision-maker's review of governmental records to determine whether they contain privileged material." Paff v. Div. of L., 412 N.J. Super. 140, 161 (App. Div. 2010) (internal quotations and citation omitted).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION