**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3282-22

EUGENE ALLEN,

    Plaintiff-Appellant,

v.

ATLANTIC CITY BOARD
OF EDUCATION,

    Defendant-Respondent.

_____

Argued February 4, 2025 – Decided March 13, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2843-18.

William S. Donio argued the cause for appellant (Cooper Levenson, PA, attorneys; William S. Donio and Kasi M. Gifford, on the briefs).

Susie B. Burns argued the cause for respondent (PRB Attorneys At Law, LLC, attorneys; Susie B. Burns, of counsel and on the brief).

PER CURIAM

Plaintiff Eugene Allen appeals from December 20, 2022 and March 21, 2023 Law Division orders partially granting summary judgment and a May 19, 2023 order awarding him attorney fees against defendant Atlantic City Board of Education ("Board") under the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13. We affirm.

I.

Plaintiff has been employed as a tenured teacher since 2009. He has also coached the Atlantic City High School ("ACHS") boys' basketball team for many years. Both his role as a coach and teacher were governed by the Collective Negotiated Agreement ("CNA") between the Atlantic City Education Association and the Board.

Pursuant to the CNA Section 11.4.1, teachers holding extracurricular positions must submit a notice of intent to return. The CNA further provided the Board had sixty calendar days to notify the teacher if it did not intend to continue them in the extracurricular position. Plaintiff submitted his intent to return as Head Coach for the 2018-2019 basketball season in a timely manner.

At the June 2018 Board meeting, during public comment, the father of a basketball player complained about plaintiff's foul language and disrespect towards the players. Specifically, he pointed to a text exchange between some

of the players and plaintiff, where, in response to a question about an end of season banquet for the team, plaintiff wrote, "[player] you must get out of wanting s[**]t we really didn't earn. That's what's wrong with AC KIDS they want s[**]t without earning. What did we actually win to earn a banquet?" Later that day, plaintiff apologized for sending the text and then organized and paid for a banquet.

As a result of the complaint, the Board's solicitor held an "informal" meeting with plaintiff to hear his side of the story. The Board did not tell plaintiff he could have a union representative with him during the meeting or that this meeting could negatively impact his employment. He was not provided a written summary of the meeting. As a result of the meeting, plaintiff was informed that he had to attend sensitivity training.

The same parent attended the July Board meeting and complained again about plaintiff. In August, the solicitor prepared a report for the Board, making certain "findings." The findings included but were not limited to: a record of prior complaints from the same parent; no record of prior player complaints; and the conclusion that plaintiff lacked knowledge about the school policy against unapproved group text messaging between teachers and students.

A-3282-22

At the October Board meeting, the same parent appeared and repeated his complaint. Superintendent Barry Caldwell responded, stating that the matter with plaintiff had been investigated and "adjudicated." Six days before the November Board meeting, the Board emailed an electronic Rice[1] notice to plaintiff. During the meeting, Caldwell recommended reappointing plaintiff as coach. The Board went into closed session to discuss plaintiff's reappointment, then emerged from closed session and rejected Caldwell's recommendation.

The following week, plaintiff filed a verified complaint with order to show cause seeking: reinstatement as coach; an injunction against the Board to prevent further action against him; and attorney's fees. The trial court granted the order to show cause and ordered the Board to temporarily reinstate plaintiff as coach.

The Board next issued plaintiff another Rice notice, giving one day notice, for the December meeting. At the meeting, Board member Shay Steele read a letter into the record, discussing the parent's allegations against plaintiff, and the Board's actions and deliberations regarding same. Steele stated the rationale for his "no" vote against reappointing plaintiff, elaborating on his beliefs about

---

[1] Rice v. Union Cnty. Reg'l High School Bd. of Ed., 155 N.J. Super. 64 (App. Div. 1977).

the veracity of the allegations as well as what he contended was the improper conduct of the superintendent and staff in investigating the matter.

On the return date for the order to show cause, the court ordered that the reinstatement become permanent, finding the Board violated the Open Public Meetings Act, N.J.S.A. 10:4-12(b)(8) ("OPMA") and the CNA. Specifically, the court determined that the Rice notice was inadequate and not properly served.

After being permanently reinstated, plaintiff filed an amended verified complaint in lieu of prerogative writ, alleging violations of the OPMA; the Employer-Employee Relations Act, N.J.S.A. 34:13A-22 to 23; the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c) ("NJCRA"); Retaliation; OPRA, N.J.S.A. 47:1A-1 to 13; the Common Law Right of Access; and the Conscientious Employee Protection Act, N.J.S.A. 34:19-3 ("CEPA").

At the close of discovery, plaintiff and the Board each moved for summary judgment, with plaintiff also moving for attorney's fees. On December 20, 2022, the court granted summary judgment for plaintiff for defendants' violation of the OPMA and their violations of the Employer-Employee Relations Act. The court determined that it had already ordered a remedy, which was to reinstate plaintiff

as coach for the remainder of the season. As such, no monetary damages were ordered.

The court determined that plaintiff did not have a substantive right to notice when plaintiff met with the solicitor or when Board Member Steele read his letter to the Board during a public meeting. The court also dismissed the complaint against the Board regarding retaliation and CEPA.

On March 21, 2023, the court granted plaintiff's motion for summary judgment on his OPRA claims and denied his common law right of access claim. On May 19, 2023, the court made findings and awarded the attorney fees for the OPRA violation in the amount of $21,390.

This appeal follows.

## II.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a

6

genuine issue of material fact exists . . . [we] 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (second alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). We do not defer to the trial court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Our review of rulings of law and issues regarding the applicability, validity (including constitutionality) or interpretation of laws, statutes, or rules is de novo. See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (agency's interpretation of a statute). We owe no deference to the trial court's legal determination. Tumpson v. Farina, 218 N.J. 450, 467 (2014) (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013)).

We should not set aside an award of attorney's fees except "on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). Where the trial court's determination of fees

A-3282-22

was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment, then we should intervene. Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

## III.

### A.

First, plaintiff argues that although the trial court correctly determined there was a violation of the OPMA, it erred by finding the OPMA violation did not create a substantive due process right under the NJCRA. He further contends that in enacting the NJCRA, the Legislature intended to supplement the remedies available to litigants under the OPMA.

The NJCRA states in relevant part that:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

A-3282-22

In addition to an action for damages and injunctive relief, the NJCRA permits the court to "award the prevailing party reasonable attorney's fees and costs." N.J.S.A. 10:6-2(f).

The NJCRA "was adopted in 2004 'for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill in any gaps in state statutory anti-discrimination protection.'" Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). Moreover, it was intended to provide a remedy for violation of substantive rights established under the New Jersey Constitution and State law. Tumpson, 218 N.J. at 474. It was "intended to expand the remedies already provided to victims of bias and discrimination under [the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49] to citizens whose other substantive rights were not adequately protected under existing law." Ibid.

In determining whether New Jersey's Constitution and laws confer a substantive right on a class of individuals, our Supreme Court has considered the interpretation given to the parallel provisions of the Federal Civil Rights Act, 42 U.S.C.A. § 1983. Ibid. The Court has observed that like the NJCRA, Section 1983 is not a source of substantive rights, but is instead a vehicle by

which rights established under Federal law may be vindicated.  Id. at 475 (citing Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617-18 (1979)).

In Tumpson, the Court applied the test established in Blessing v. Freestone, 520 U.S. 329, 340-41 (1997), for determining whether a statute provides a class of individuals in a particular case with a substantive right.  Id. at 475-76.  The Court later refined this test in Harz v. Borough of Spring Lake, 234 N.J. 317, 331 (2018).  The test requires courts to consider, in making that determination, whether:  (1) the statute was intended to confer a right on an individual; (2) the right is "so 'vague [or] amorphous' that its enforcement would strain judicial competence"; and (3) the law unambiguously imposes a binding obligation on the State or its political subdivisions.  Ibid. (quoting Tumpson, 218 N.J. at 475) (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002)).

We now shift our attention to the OPMA, which requires meetings of public bodies to be conducted in open session and in view of the public under N.J.S.A. 10:4-12(a), with several exceptions as provided in N.J.S.A. 10:4-12(b).  One such exception is:

> matter[s] involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion, or discipling of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body,

10

> unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting.
>
> [N.J.S.A. 10:4-12(b)(8).]

Relief under the OPMA is limited to three remedies. The OPMA provides in pertinent part that any action taken by a public body at a meeting that does not conform to the Act's requirements "shall be voidable in a proceeding in lieu of prerogative writ" that may be brought in the Superior Court. N.J.S.A. 10:4-15(a). Moreover, "[a]ny party, including any member of the public, may institute" such a proceeding. N.J.S.A. 10:4-15(b). If the court finds "that the action was taken at a meeting which does not conform to the provisions of [the] act, the court shall declare such action void." Ibid. In addition, the Act states that "any person . . . may apply to the Superior Court for injunctive orders or other remedies to ensure compliance with the provisions of [the] act, and the court shall . . . provide such remedies as shall be necessary to insure compliance with the provisions of [the] act." N.J.S.A. 10:4-16. The Act also provides limited monetary penalties for persons who knowingly violate any provision of the Act. N.J.S.A. 10:4-17. The Act does not provide for the award of attorney's fees and costs to the prevailing party.

Turning to the interplay between the NJCRA and the OPMA, it is clear, that the OPMA establishes substantive rights under the Tumpson and Harz tests. Among other things, the Act states that the public has the right "to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation . . . [and] to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way . . . ." N.J.S.A. 10:4-7. Furthermore, the public's rights under the Act are not vague and amorphous and the enforcement of such rights would not strain judicial competence.

Since the OPMA creates substantive rights under the test, we must determine whether enforcement of those rights under the NJCRA is compatible with the OPMA. In Tumpson, the Court explained that even if a Federal statute is found to create an individual right, this only gives rise to a rebuttable presumption that the right is enforceable under Section 1983. Tumpson, 218 N.J. at 475 (citing Blessing, 520 U.S. at 340-41). Indeed, Congress may expressly or impliedly foreclose a remedy under Section 1983 "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983." Ibid. (quoting Blessing, 520 U.S. at 341). The Tumpson Court applied these principles in determining whether the NJCRA

12

applies to the deprivation of substantive rights established under New Jersey law.

In Tumpson, the Court noted that under the Faulkner Act, the public had a right of referendum to approve or disapprove any ordinance passed by a governing body in a Faulkner Act municipality. Id. at 468 (citing N.J.S.A. 40:69A-185 to -192). The Court found that the power of referendum under N.J.S.A. 40:69A-185 is a substantive right conferred upon all voters in the municipality, and enforcement of this right would not "strain[ ] judicial competence." Id. at 478. Moreover, the right is substantive, not procedural, because a City Clerk's failure to file the referendum petition to allow a vote on an ordinance gives rise to a cause of action to enforce the right. Ibid.

The Tumpson Court further found that nothing in the NJCRA "remotely suggests" that the Legislature intended its remedies would not apply to enforcement of the right of referendum. Id. at 478-79. The Court emphasized that if the Legislature intended to carve out this statutory area, "presumably the Legislature would have said so." Id. at 479 (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)). The Court held that one of "the most powerful remedies" of the NJCRA is the award of attorney's fees to the prevailing party. Ibid. (citing N.J.S.A. 10:6-2(f)). The Court noted that a successful litigant in an action to

13

enforce the right of referendum usually would not obtain monetary damages and the average citizen seeking to enforce that right may not be able to afford to litigate the issue. Id. at 480. The Court therefore held that the NJCRA was intended to apply to such a case. Ibid.

In contrast, in the OPMA, the Legislature created specific remedies for violations of the law and there was no indication the Legislature intended to supplement those remedies by allowing claims to be brought under the NJCRA for deprivations or threatened deprivations of rights under the Act. The broad remedies available under the NJCRA are entirely inconsistent with the comprehensive statutory scheme in the OPMA. The Act does not provide for the award of damages, which is permitted under the NJCRA. The Act provides for the grant of limited injunctive relief and other remedies to ensure prospective compliance with the Act. N.J.S.A. 10:4-16.

The injunctive relief available under the NJCRA is not limited in the manner described in the OPMA. Furthermore, under the OPMA, the monetary penalties that can be assessed for violations are strictly limited, there is no right to a jury trial, and the penalties are recoverable in a summary proceeding in the Superior Court. N.J.S.A. 10:4-17. The limited remedies available under the OPMA indicate that the Legislature intended to foster compliance with the open

14

meeting and public notice requirements without unduly burdening public bodies and their members with unlimited monetary penalties and awards of attorney's fees and costs.

We are not convinced the Legislature intended to supplement that statutory scheme by applying the NJCRA to deprivations or threatened deprivations of rights established under the OPMA. Applying the remedies under the NJCRA to violations of the OPMA would not complement the OPMA. Rather, it would substantially alter a comprehensive existing legislative scheme. It is not our role to expand the recovery under a statutory scheme that the Legislature did not provide.

### B.

Plaintiff next contends the trial court abused its discretion in awarding him only a portion of his attorney's fees under the OPRA count. Plaintiff believes that since N.J.S.A. 47:1A-6 provides "[a] requestor who prevails in any proceedings shall be entitled to a reasonable attorney's fee," he should have been awarded the entirety of his attorney's fees he incurred in this matter.

Plaintiff cites to Mason v. City of Hoboken, in which our Supreme Court adopted the catalyst theory for attorney's fees. 196 N.J. 51 (2008). He states that here, the catalyst theory applies because "[t]his litigation served as the

catalyst which changed much of the Board's illegal behavior." Moreover, he argues that had documents been produced in response to the OPRA request, much of this litigation would not have been necessary.

The OPRA mandates that a custodian of records must either grant or deny access to requested records within seven business days from receipt of a request. N.J.S.A. 47:1A-5(i)(1). The OPRA includes an exception to the "American Rule," under which a prevailing party ordinarily cannot recover attorney's fees from the losing party. See Mason, 196 N.J. at 70 (citing Rendine v. Pantzer, 141 N.J. 292, 322 (1995)); N.J.S.A. 47:1A-6 ("A person who is denied access to a government record by the custodian of the record, at the option of the requester, may: institute a proceeding to challenge the custodian's decision . . . . A requester who prevails in any proceeding shall be entitled to a reasonable attorney' fee."). In Mason, our Supreme Court undertook an extensive review of the question of a parties' entitlement to attorney's fees under the OPRA. 196 N.J. 51. The Court explained the OPRA contains broader language on attorney's fees than the former Right To Know Law, N.J.S.A. 47:1A-1 to -4 (repealed 2002), ("RTKL"), and clarified the Legislature's revisions to the statute to: (1) mandate, rather than permit, an award of attorney's fees to a prevailing party;

and (2) eliminate the $500 cap on fees and permit a reasonable, and quite likely higher, fee award. Id. at 75.

The Court explained that requestors are entitled to attorney's fees through the catalyst theory under the OPRA, absent a judgment or an enforceable consent decree, when they can demonstrate: (1) "a factual causal nexus between plaintiff's litigation and the relief ultimately achieved"; and (2) "that the relief ultimately secured by plaintiffs had a basis in law." Id. at 76 (quoting Singer v. State, 95 N.J. 487, 494 (1984)). "Consistent with our case law, litigants seeking fees are required to make that showing." Ibid. (internal citations omitted).

Here, the court determined that plaintiff should be awarded attorney's fees for the OPRA count. However, the court found that plaintiff was not entitled to attorney fees for all the other dismissed counts. The court found that this was an "unusual OPRA case" partly because "plaintiff took extensive discovery in order to litigate claims and issues that were one, not implicated by the initial OPRA request, and two, were ultimately unsuccessful to the extent that they were dismissed on summary judgment." Further, in its discussion of reasonable attorney's fees as awarded under the OPRA, the court found that much of the actions taken by appellant's attorneys were unnecessary. Because the court's fee award was tethered to work directly related to the OPRA violation, the court did

not abuse its discretion in awarding attorney's fees for that reasonable amount. The court's fee award was amply supported by the record.

To the extent we have not specifically addressed any other contentions raised by defendants, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3282-22